1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  RONALD ADAMS,                              CASE NO. 1:04-cv-06658-LJO DLB PC

10              Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                              RECOMMENDING DEFENDANT'S MOTION
11     v.                                     FOR SUMMARY JUDGMENT BE GRANTED

12  P.L. VAZQUEZ, et al.,                     (Doc. 111)

13              Defendants.
                                     /
14

15  I.    Findings and Recommendations Addressing Defendant's Motion for Summary Judgment

16        A.    Procedural History

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action

18  pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's amended complaint, filed May

19  9, 2005, on plaintiff's denial of access to courts claims against defendants Vazquez, Tinsley and

20  Armendariz and on plaintiff's retaliation claim against defendant Tinsley.[1]   On May 19, 2008,

21  defendants filed a motion for summary judgment. Plaintiff filed an opposition on June 16, 2008, and

22  defendant filed a reply on July 14, 2008.[2]   On July 12, 2008, Plaintiff filed  his "Reply to

23  Defendant's Arguments In their Motion for Summary Judgment that Plaintiff Opposition is

24

25        [1] On March 8, 2007, plaintiff's denial of access claims against defendants Tilton, Olson, Snyder, Eiland,
26  Altnow and McEwen were dismissed from this action, without prejudice, for failure to state a claim upon which
    relief may be granted. Doc. 82.

27

28        [2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
    court in an order filed on February 17, 2006.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  Doc. 23.

1

1    Procedurally deficient and should be disregarded."

2        B.    Summary Judgment Standard

3        Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

4    as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

5    Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It is the moving party's burden to establish that

10   there exists no genuine issue of material fact and that the moving party is entitled to judgment as a

11   matter of law.  British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

12       "When the moving party does not have the burden of proof on the issue, he need show only

13   that the opponent cannot sustain his burden at trial."  Calderone v. United States, 799 F.2d 254, 259

14   (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining

15   Issues of Material Fact 99 F.R.D. 465, 487 (1984)).  "But where the moving party has the burden -

16   the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be

17   sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

18   party."  Id.  Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there

19   is no triable issue as to the matters alleged in his complaint.  Id.  This requires plaintiff to establish

20   beyond controversy every essential element of his retaliation claims.  Fontenot v. Upjohn Co., 780

21   F.2d 1190, 1194 (5th Cir. 1986).  Plaintiff's evidence is judged by the same standard of proof

22   applicable at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

23       As to defendants' motion for summary judgment, "where the nonmoving party will bear the

24   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

25   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

26   Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Indeed, summary judgment should be entered,

27   after adequate time for discovery and upon motion, against a party who fails to make a showing

28   sufficient to establish the existence of an element essential to that party's case, and on which that

1   party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an

2   essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

3   In such a circumstance, summary judgment should be granted, "so long as whatever is before the

4   district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

5   56(c), is satisfied." Id. at 323.

6       If the moving party meets its initial responsibility, the burden then shifts to the opposing

7   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

8   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence

9   of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

10  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

11  material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475

12  U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e.,

13  a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,

14  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

15  626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

16  jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d

17  1433, 1436 (9th Cir. 1987).

18      In the endeavor to establish the existence of a factual dispute, the opposing party need not

19  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

20  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

21  trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

22  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

23  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

24  amendments).

25      In resolving the summary judgment motion, the court examines the pleadings, depositions,

26  answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ.

27  P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all

28  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

C.      <u>Undisputed Facts</u>[3]

1.      At al times relevant to this action, Plaintiff was an indigent prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Wasco State Prison (WSP), in Wasco, California.

2.      At all times relevant to this action, Defendant Vazquez, Tinsley and Armendariz were employed by the CDCR; Vazquez served as the Warden at WSP and Tinsley and Armendariz worked as law library technical assistants.

3.      Plaintiff filed a petition for writ of habeas corpus in the District Court for the Central District of California on April 7, 2004.

4.      After filing his April 7, 2004 petition, plaintiff submitted several late filings to the court concerning his habeas petition.

5.      All of plaintiff's later filings were accepted by the court.

---

[3] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial."  Local Rule 56-260(b).  In this instance, plaintiff did not comply with the Local Rule.  Therefore, defendant's Statement of Undisputed Facts is accepted except where contradicted by plaintiff's complaint and declaration submitted in support of his opposition.  Plaintiff's complaint and declaration may be treated as opposing affidavits to the extent that they are verified and sets forth admissible facts (1) within plaintiff's personal knowledge and not based merely on plaintiff's belief, and (2) to which plaintiff is competent to testify.  <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004); <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); <u>McElyea v. Babbitt</u>, 833 F.2d 196, 197-98 (9th Cir. 1987); <u>Lew v. Kona Hosp.</u>, 754 F.2d 1420, 1423 (9th Cir. 1985).

6.    Plaintiff's April 7, 2004 petition was ultimately dismissed with prejudice after a complete evaluation on the merits, without any indication that the late filings affected the court's ruling.

7.    On June 3, 2004, plaintiff filed a second petition for writ of habeas corpus with respect to his conviction.

8.    Plaintiff prosecuted his June 3, 2004 petition through the federal court and ultimately filed a petition for a writ of certiorari with the United States Supreme Court.

9.    Plaintiff's petition for writ of certiorari was due March 8, 2005.

10.   From November 2004 until March 5, 2005, plaintiff prepared his writ of certiorari to the United States Supreme Court.

11.   Between November 3, 2004 and March 5, 2005, plainitff visited the law library twenty-one times.

12.   When plaintiff visited the law library, his requests for free copies of law book pages because he was indigent, were denied by Defendants Tinsley and Armendariz in accordance with Department Operations Manual § 14010.21.3, which states that: (1) inmates are to be charged for copies of all non-legal documents and; (2) law book pages are considered non-legal documents.

13.   Defendants Tinsley and Armendariz denied Adams's requests for free copies of law book pages, under Department Operations Manual § 14010.21.3, because they understood that copies of law book pages had to be purchased and plaintiff was indigent.

14.   From November 2004 through March 2005, WSP's Facility -A Law Library was open twice a week, for three and a half hours on Wednesday and five hours on Saturday.

15.   From February 14, 2005 though February 25, 2005, the Facility A Law Library was closed for remodeling.

16.   Five days before the law library closure, a memo, authored by Warden Vazquez, was circulated to all staff and inmates outlining the procedure for inmates to access legal materials during the law library closure.

17.   The procedure for accessing legal materials required inmates to submit a written request for

interview form, specifying what legal materials they needed; these legal materials would then be delivered to inmates on a weekly basis.

18. During the law library closure in February 2005, Plaintiff submitted one written request for interview form, asking to visit the law library to conduct research and make copies for motions.

19. Plaintiff's request for interview was not submitted to Defendant Tinsley or Armendariz.

20. In his request for interview, Plaintiff did not identify the specific legal materials he needed.

21. Plaintiff's request for interview was denied for not complying with procedure.

22. Plaintiff's petition for writ of certiorari was mailed on March 14, 2005 and received by the Supreme Court on March 22, 2005.

23. Because Plaintiff's petition for writ of certiorari was late, the court rejected it.

24. Plaintiff also filed a § 1983 action in the Central District of the United States District Court, in which he alleged that a repossession company and its employees violated his constitutional rights when they attempted to tow plaintiff's car (before his incarceration).

25. Plaintiff's § 1983 case was ultimately dismissed on the ground that plaintiff's complaint did not state a claim § 1983 because none of the defendants acted under color of state law.

26. Plaintiff appealed the dismissal of his § 1983 case to the Ninth Circuit Court of Appeals.

27. As an exhibit to is appellate reply brief, plaintiff sought to include pertinent portions of the 2002 edition of the Collateral Recovery Act.

28. Plaintiff believed he needed to explain to the court, in his reply brief, what laws, regarding repossession, were broken on the night of his arrest.

29. Plaintiff was unable to include the 2002 edition of the Collateral Recovery Act as a reply brief exhibit because Defendant Tinsley refused to make a copy of it.

30. The Ninth Circuit issued a decision affirming the lower court's denial of Plaintiff's action.

31. On May 9, 2004, Plaintiff filed a grievance, seeking to change how the law library processes inmate trust account statements to the courts when the inmate-plaintiffs file for pro se status.

32. Plaintiff's grievance was granted at the second level of review and a new procedure for processing inmate trust account statements at WSP's law library was implemented.

33.   This grievance did not specifically name Defendant Tinsley nor did Tinsley respond to this grievance at any level of review.

34.   In October 2004, after visiting the law library and returning to his cell for the day, a correctional officer came to Plaintiff's cell and informed him that the law librarian believed a book had been taken from the law library.

35.    Because Plaintiff had visited the law library that day, his cell was searched.

36.   The missing law book was not found in Plaintiff's cell.

37.   In November 2004, which waiting for the law library to open, Plainitff saw Defendant Tinsley speak with two correctional officers.

38.   Defendant Tinsley then opened the law library and the two correctional officers approached Plaintiff and searched him before he was allowed to enter the law library.

39.   On December 1, 2004, Defendant Tinsley generated a Rules Violation Report against Plaintiff.

40.   In Rules Violation Report Log No. PA-04-12-0012, Defendant Tinsley indicated that during a visit to the law library, Plaintiff was verbally abusive and disrespectful toward correctional staff.

41.    Rule Violation Report Log No. PA-04-12-0012 was ultimately reduced to a CDC 128-B chrono which was placed in plaintiff's prison central file.

42.   On January 3, 2005, plaintiff filed a staff complaint against Defendant Tinsley, alleging that during several of his visits to the law library, Tinsley disrespected him, denied him access to legal materials and the copying of legal paperwork, she used other staff to harass him and she had been overfamiliar with white and hispanic inmates.

43.   Defendants contend Appeal log no WSP-A-05-00018 was the first staff complaint plaintiff filed against Defendant Tinsley.

44.   On February 23, 2005, plaintiff was assigned to work in WSP's law library, but was unassigned from this position within four hours.

45.   Plaintiff was unassigned from working in the law library because Defendant Tinsley phoned the Inmate Assignment Office and told them that allowing Plaintiff to work in the law library

1    would create a safety and security hazard to herself and the institution based upon Plaintiff's

2    prior behavior in the law library.

3    46.    When making the phone call to the Inmate Assignment Office, Defendant Tinsley believed

4    that if Plaintiff were allowed to work in the law library, he might repeat his past behavior of

5    being verbally abusive and disrespectful toward correctional staff.

6    47.    When making the phone call to the Inmate Assignment Office, Defendant Tinsley states that

7    she feared, based on her past experiences working WSP, that if plaintiff repeated his

8    inappropriate behavior, it would create a hazard to the safety and security of the institution

9    because: (1) other inmates in the law library, who observed plaintiff's behavior, would not

10    respect correctional staff's authority, thus making it more difficult for correctional staff to

11    enforce prison rules; (2) other inmates in the law library, who observed plaintiff's behavior,

12    would think that they could engage in similar behavior; and (3) there was the potential that

13    plaintiff's behavior could incite inmates in the law library to become physically violent

14    toward other inmates or correctional staff.

15    48.    On July 20, 2005, Defendant Tinsley generated a CDC 128-B chrono against plaintiff.

16    49.    The July 20, 2005 CDC 128-B chrono indicated that plaintiff had filed false staff complaints

17    against Defendant Tinsley, had been disrespectful toward library staff and had yelled at

18    Defendant Tinsley and behaved in an aggressive manner toward her on several occasions.

19    50.    The July 20, 2005 CDC 128-B chrono further indicated that based upon plaintiff's behavior,

20    Defendant Tinsley feared for her safety and thought it best for plaintiff to transfer to another

21    institution.

22    51.    Tinsley contends that she generated the July 20, 2005, CDC 128-B chrono against plaintiff

23    in order to: (1) put plaintiff on notice that his behavior was inappropriate and to deter him

24    from engaging in future disruptive behavior; and (2) to place other correctional staff on

25    notice of plaintiff's disruptive behavior so that they could take appropriate steps to prevent

26    plaintiff from engaging in any similar future behavior.

27    52.    In issuing the July 20, 2005 CDC 128 B chrono to plaintiff, Defendant Tinsley states that her

28    sole motivation was to attempt to deter any future misbehavior by plaintiff so as to ensure

8

the safety and security of the institution.

53.  On August 7, 2005, plaintiff filed a second staff complaint against Defendant Tinsley alleging that Tinsley made unfounded and false allegations against him in the July 20, 2005 chrono (mentioned above).  Plaintiff requested that this chrono be removed from his central file.

54.  Defendant Armendariz contends that on September 24, 2005, plaintiff was disrespectful and argumentative with staff while in the law library after being denied copy service because the copier was out of order.

55.  On September 24, 2005, Defendant Armendariz generated a CDC 128-B chrono against Plaintiff.

56.  On September 28, 2005, Defendant Armendariz generated a CDC 128 B chrono describing how another inmate was disruptive in the law library.  This chrono was inadvertently placed in plaintiff's central file.

57.  The September 28, 2005 chrono indicates that inmate Walker had become disruptive in the law library.

58.  Plaintiff was not identified in the September 28, 2005 chrono at all.

59.  After issuing the September 28, 2005 chrono, Defendant Armendariz subsequently issued a corrected chono indicating that plainitff was not involved in the incident described and that the chrono had been mistakenly placed in plaintiffs central file.

60.  On January 5, 2006, plaintiff received another Rules Violation Report.

61.  Rules Violation Report log no. PA-05-12-0050 was authored by Officer T. Barrier and reviewed by Sergeant F.E. Fuhlrodt and Captain S. Cheney.

62.  In Rules Violation Report log. No. PA-05-12-0050, plaintiff was cited for kicking a building door and refusing to obey a correctional officer's orders.

63.  Defendant Tinsley is not mentioned at all in Rules Violation Report Log No. PA-05012-0050, except in reference to plaintiff's request to call her as a witness for the Rules Violation Report hearing.

64.  Plaintiff never filed any staff complaints against Defendant Armendariz.

1    D.    Discussion

2         1.    Denial of Access to the Courts Claim

3         In his amended complaint, plaintiff alleges that defendants denied him law library access and

4    legal materials.  He also alleges defendant Vazquez refused his request to modify the law library

5    hours.  Plaintiff alleges that because of the denial of access to the law library and legal materials by

6    defendants, his petition for writ of habeas corpus was denied; he was unable to timely file a petition

7    for writ of certiorari with the United States Supreme Court; and his § 1983 lawsuit was dismissed.

8         Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518

9    U.S. 343, 346 (1996).  The right of access is merely the right to bring to court a grievance the inmate

10   wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions.

11   Id. at 354.  The State is not required to enable the inmate to discover grievances or to litigate

12   effectively once in court.  Id.

13        Inmates do not have the right to a law library or legal assistance.  Id. at 351.  Law libraries

14   and legal assistance programs are only the means of ensuring access to the courts.  Id.  Because

15   inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate

16   cannot establish relevant actual injury by establishing that his prison's law library or legal assistance

17   program is subpar in some theoretical sense."  Id.  Rather, an inmate claiming interference with or

18   denial of access to the courts must show that he suffered an actual injury.  Id.

19        Claims for denial of access to the courts may arise from the frustration or hindrance of "a

20   litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a

21   meritorious suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536

22   U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002).  For backward-looking claims such as that at

23   issue here, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2)

24   the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but

25   that is not otherwise available in a future suit."  Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir.

26   2007).

27        The first element requires that plaintiff show he suffered an "actual injury" by being shut out

28   of court.  Harbury 536 U.S. at 415, 121 S.Ct. at 2187; Lewis, 518 U.S. at 351, 116 S.Ct. at 2180;

1  Phillips, 477 F.3d at 1076. The second element requires that plaintiff show defendant proximately

2  caused the alleged violation of plaintiff's rights, "[t]he touchstone . . . [for which] is foreseeability."

3  Phillips at 1077. Finally, the third element requires that plaintiff show he has no other remedy than

4  the relief available via *this* suit for denial of access to the courts. Id. at 1078-79.

5        a.    Plaintiff's Petition for Writ of Habeas Corpus

6        On April 7, 2004, plaintiff filed a petition for writ of habeas corpus in the Central District

7  of California, Adams v. Vazquez 2:04-cv-2461 SGL. DUF 3. Plaintiff submitted several late filings

8  to the court concerning his habeas petition but all filings were accepted by the court. DUF5.

9  Plaintiff contends these late filings were caused by defendants' denial of copy services to him.

10  Compl. ¶¶ 60-61. The court dismissed plaintiff's petition on the merits. DUF 6.

11        Defendants argue that they did not interfere with plaintiff's petition for writ of habeas corpus

12  because all of the late filings were accepted and the petition was ultimately dismissed after a

13  complete evaluation of the merits.

14        In opposition, plaintiff appears to argue that defendants denied him access to court with

15  respect to his underlying May 12, 2003 state court petition for writ of habeas corpus. Plaintiff's

16  Opp., p.5, Ex. C. However, the order dismissing the May 12, 2003 petition shows that the petition

17  was dismissed on the merits, with no mention of late filings. *Id.* Plaintiff's petition was not

18  dismissed because plaintiff filed a deficient or untimely pleadings in the district court; the petition

19  was dismissed as procedurally barred because plaintiff failed to properly challenge his conviction

20  in state court. *See* Plaintiff's Opposition, Ex. C.

21        Defendants have presented evidence demonstrating that plaintiff did not suffer actual injury

22  with respect to his April 7, 2003 petition for writ of habeas corpus. Plaintiff has failed to dispute this

23  evidence and in response has provided evidence that he also did not suffer actual injury with respect

24  to his May 12, 2003 petition for writ of habeas corpus. Defendants are therefore entitled to judgment

25  as a matter of law on plaintiff's denial of access to court's claim with respect to these petitions.

26        b.    Plaintiff's Petition for Writ of Certiorari

27        On June 3, 2004, plaintiff filed a petition for writ of habeas corpus. DUF 7. Plaintiff

28  prosecuted his claim through the federal courts. DUF 8. Plaintiff's petition for writ of certiorari was

due in the United States Supreme Court on March 8, 2005.  DUF 9.  Plaintiff worked on his petition from December 2004 through March 2005.  Between November 4, 2004 and March 5, 2005, plaintiff visited the law library twenty-one times.  DUF 11.  During this time frame, plaintiff also made requests for free copies of law materials because he was indigent.  DUF 12.  These requests were denied by defendants Tinsley and Armendariz.  *Id.*  Defendants contend the requests were denied pursuant to Department Operations Manual § 14010.21.3 which states: (1) inmates are to be charged for copies of all non-legal documents; and (2) law book pages are considered non-legal documents. *Id.*

From November 2004 through March 2005, WSP's Facility Law Library was open twice a week, for three and a half hours on Wednesday and five hours on Saturday.  DUF 14.  From February 14, 2005 through February 25, 2005 the library was closed for remodeling DUF 15.  Prior to the closure, Warden Vazquez issued a memorandum advising inmates that during the closure, the inmates could submit a written request for interview form, specifying what legal materials they needed and those legal materials would be delivered to the inmates on a weekly basis.  DUF 16-17. During the library closure in February 2005, plaintiff submitted one request for interview form, asking to visit the library to conduct research and make copies for motions.  DUF 18.  Plaintiff's request was not submitted to either defendant Tinsley or Armendariz.  DUF 19.  The request was denied because plaintiff did not specify the materials he needed.  DUF 20-21.  Plaintiff's petition for writ of certiorari was mailed on March 14, 2005 and received by the Supreme Court on March 22, 2005.  DUF 22.  The Court rejected plaintiff's petition because it was late.  DUF 23.

Defendants argue that plaintiff's actions caused the late filing of his petition for writ of certiorari in that he failed to effectively use his twenty-one trips to the law library to timely prepare his petition and he failed to properly request legal materials while the law library was closed in February 2005.  Defendants also argue that "numerous courts have rejected any constitutional right to free and unlimited photocopying."  Sands v. Lewis, 886 F.2d 1166, 1169 (9th Cir. 1989). Defendants therefore argue that the denial of plaintiff's requests for free copies did not violate his constitutional right to access to the courts.

1    In opposition, Plaintiff argues that pursuant to CCR 3122(a), as an inmate with a court

2    deadline, he should have been given "priority user" status and access to the law library.  Opp., p11-

3    12.  Plaintiff submits that in contrast to WSP, the law library at Folsom State Prison is open six days

4    a week and has a procedure in place to issue inmate priority law library passes.  Plaintiff also

5    contends that in May 2004, he filed an inmate appeal regarding the law library conditions. *See* Opp.

6    Ex. J.  Plaintiff's appeal was partially granted in that it was concluded that "the law library will also

7    provide inmates with copies of documents in accordance with departmental regulations and policy

8    within reasonable and justifiable circumstances."  Plaintiff contends defendants did not provide him

9    copies as required under the regulations and prison policy.

10    Plaintiff also submits evidence that the law library did not reopen until early March 2005.

11    Opp., Ex. Y.  Plaintiff argues that the temporary procedures outlined in the Warden Vazquez'

12    memorandum were only valid until February 24, 2005.  Plaintiff therefore presumably argues that

13    he was without law library access from February 25, 2005 through March 7, 2005.  Plaintiff also

14    submits copies of the minutes of meetings of the Mens Advisory Counsel for this time period,

15    wherein inmates complained about the hours of the law library.  Opp. Ex. X.  These minutes reflect

16    that Warden Vazquez was present. *Id.*  Warden Vazquez responded that the law library schedule was

17    due to state budget constraints. *Id*.  Plaintiff appears to argue that his right to access the law library

18    should outweigh state budget constraints.  Opp. 51.  Plaintiff argues that Warden Vazquez should

19    have instituted a law library schedule that would have allowed him more library access during the

20    time he was preparing his writ so he could do the necessary research because he had three cases

21    pending at the time.

22    Plaintiff has not his burden to establish a genuine issue as to any material fact with respect

23    to this claim.  As stated above, in attempting to establish the existence of this factual dispute,

24    plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender

25    evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support

26    of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First

27    Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

28    Plaintiff's opposition is largely non-responsive to defendants' arguments.  While plaintiff

13

1  insists that defendants denied him necessary legal materials and adequate library time, plaintiff fails

2  to elaborate on how that can be the case, in light of the undisputed fact that plaintiff visited the law

3  library twenty one times during the period November 2004 through March 2005. DUF 11. Pursuant

4  to prison regulation, defendants denied plaintiff's request for free copies of law book pages (DUF

5  12), but plaintiff has failed to demonstrate that the denial was improper or that not having the copies

6  caused his late filing.

7      As discussed above to prevail on a denial of access claim, plaintiff must establish that

8  defendants' acts frustrated the underlying litigation.  *See* <u>Phillips v. Hust</u>, 477 F.3d at 1076.  This

9  requires plaintiff "to show that the alleged violation of his rights was proximately caused" by the

10  state actor defendants.  *Id*. at 1077.  Plaintiff has failed to do so here.

11      In <u>Phillips</u>, the plaintiff alleged that the defendant's refusal to allow him access to a comb-

12  binding machine resulted in his untimely petition for certiorari seeking review of plaintiff's state

13  court post conviction action.  *Id*.  at 1076.  In addressing the proximate cause element, defendant

14  argued that plaintiff could have used an alternative means of binding his petition or he could have

15  submitted the petition unbound.  The Ninth Circuit found that: "even if Hust's actions were not an

16  insurmountable obstacle to Phillip's attempt to assert his claim. Hust effectively prevented Phillips

17  from filing his cert. Petition by arbitrarily and selectively denying him access to the comb-binding

18  machine."  *Id.* at 1077.

19      Here, unlike <u>Phillips</u>, there is not a clear cause and effect between defendants actions and the

20  rejection of plaintiff's petition.  There is no evidence that defendants denied plaintiff any specific

21  material or service which resulted in his untimely filing.  While plaintiff did not have as much library

22  time as he desired, the Constitution does not require the "open door" library policy that plaintiff

23  demands.  The undisputed evidence shows that plaintiff had library time and in fact was litigating

24  other cases at the same time his petition was due.  In addition, there is no evidence that defendants'

25  actions were arbitrary and selective.  Rather, plaintiff challenges a library schedule and regulation

26  that appear to be applied evenly.  The facts of this case are sufficiently different than <u>Phillips</u> as to

27  warrant a different result.

28      In addition, plaintiff has submitted no evidence that his inability to make photocopies of the

law book pages or the denial of his request for legal materials in February 2005 was due to an action or omission of defendant.  Although the library was closed for a period, it is undisputed that there was a plan in place so that inmates could obtain access legal materials.  DUF 16-17.  Assuming as true that plaintiff's request was denied, plaintiff has not submitted any evidence defendant was the proximate cause of plaintiff's inability to gain access to the materials pursuant to the plan.  Phillips, 477 F.3d at 1077.  For the foregoing reasons, defendant is entitled to judgment as a matter of law.

c.     Plaintiff's §1983 Lawsuit

Plaintiff filed a § 1983 action in the Central Division of the United States District Court in which he alleges that a repossession company and its employees violated his constitutional rights when they attempted to tow plaintiff's car (before his incarceration).  DUF 24.  On April 25, 2005, the court summarily dismissed the case because the complaint failed to show that defendants acted under color of state law.  DUF 25.  Plaintiff appealed the dismissal to the Ninth Circuit Court of Appeals.  DUF 26.  Plaintiff sought to attach as an exhibit to his reply brief, portions of the 2002 edition of the Collateral Recovery Act.  DUF 26.  Plaintiff was unable to include the exhibit because defendant Tinsley refused to make a copy of it.  DUF 29.  The Ninth Circuit issued a decision affirming the lower court's ruling for unspecified reasons.  DUF 30.

Defendants argue that plaintiff's appeal was not dismissed because the appellate court was unable to review the portions of the Act that plaintiff sought to include as an exhibit to his reply brief.  Defendants argue that the lower court dismissed the complaint because plaintiff sought relief only against private parties and the ruling was upheld on appeal.

Plainitff argues that the exhibit would have shown that the repossession company was acting under state law because the defendant was licensed by the California Department of Consumer Affairs and the Bureau of Security and Investigative Services.  See Opp. Ex 26.

Plaintiff's argument is without merit.   In the referenced action, plaintiff alleged that he financed a Cadillac El Dorado through Community Credit Union.  DUF 24, Ex. I.  When he became delinquent in his payments, Community Credit Union hired Action Auto Recovery to repossess the car.  DUF 24, Ex. I.  The district court dismissed the case finding that "Adams Section 1983 claims fall short in showing that the repossession of his car involved state action."  Adams v. Community

Credit, 2:04 cv 00211 DT-SGL, Doc. 46, p.3:16-17.  The court continued,

> In that respect, it has long been held that a private party employing a self help remedy, such as repossessing secured property, on their own has not 'assumed' the mantle of the state' so as to be 'held to answer under Section 1983 for violating the debtor's constitutional rights' in carrying out the repossession.  Meyers v. Redwood City, 400 F.3d 765, 771 (9th Cir. 2005).

*Id.* at p.4:13-16.  The Ninth Circuit affirmed the district court's dismissal.  DUF 24, Ex. I.  Plaintiff's proposed exhibit would not have changed the result.  The mere fact that a business is subject to state regulation does not convert its actions to that of the state for purposes of a § 1983 action.  *See* Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).  Thus, defendants' actions did not cause the dismissal of plaintiff's appeal and defendants are also entitled to judgment as a matter of law of this aspect of plaintiff's denial of access to court claim.

2.     Retaliation Claim

Plaintiff claims that defendant Tinsley retaliated against him for filing staff complaints against her by: (1) having his cell searched for a missing library book in October 2004; (2) having him searched before he was allowed to enter the law library in November 2004; (3) issuing him a Rules Violation Report on December 1, 2004 for being verbally abusive and disrespectful in the library; (4) having him removed from his library assignment in February 2005; (5) issuing him a CDC 128-B chrono on July 20, 2005; and (6) issuing a CDC 128-B chronos on September 24, 2005 and a Rules Violation Report on January 5, 2006.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

////

1        a.      Tinsley's  Alleged Retaliation Prior to January 2005

2        Defendants contend that on January 3, 2005, plaintiff filed a staff complaint against Tinsley,

3    log no. WSP-A-05-00018, which was the first staff complaint plaintiff had filed against Tinsley.

4    *See* DUF 31-33, 42-43.  Defendants therefore argue plaintiff was not engaged in any protected

5    conduct prior to January 2005 and they are entitled to judgment as a matter of law as to any actions

6    taken prior to January 2005.

7        In opposition, plaintiff argues that he filed a staff complaint against Tinsley on April 17,

8    2004.  Plaintiff provides a copy of a handwritten letter, dated April 17, 2004 addressed to "Legal

9    Affairs Division," in which he complains about defendants' conduct.  Opp., Ex. 10.

10       Plaintiff has not met his burden of demonstrating the existence of material factual disputes.

11   Plaintiff relies on a handwritten letter addressed to "Legal Affairs Division," in which he complains

12   of defendants conduct.  However, plaintiff provides no evidence from which the court could even

13   infer that Tinsley was aware of this letter.  Because there is no evidence that plaintiff was engaged

14   in any protected conduct against defendant Tinsely prior to January 2005, defendants are entitled to

15   judgment as a matter of law on plaintiff's claim that defendant's actions taken prior to January 2005

16   were retaliatory.

17       b.      Plaintiff's Removal from His Library Job Assignment.

18       Defendants contend that Tinsley's actions in removing plaintiff from his law library job on

19   February 23, 2005 were motivated by a legitimate correctional purpose and therefore not retaliatory.

20   Defendants contend that in December 2004, Tinsley generated a Rules Violation Report against

21   Adams because he had been verbally abusive and disrespectful toward correctional staff.  DUF 39-

22   41.  The violation was ultimately reduced to a CDC 128-B chrono, which was placed in plaintiff's

23   central file.  DUF 41.  On January 3, 2005, Plaintiff filed a staff complaint against Tinsley alleging

24   that Tinsley was disrespectful to him during his visits to the law library.  DUF 42.  In February 2005,

25   Plaintiff was assigned to the law library but was unassigned within four hours.  DUF 44.  Plaintiff

26   was unassigned because Tinsley phoned the Inmate assignment office and told them that allowing

27   Plaintiff to work in the law library would create a safety and security hazard to herself and the

28   institution based upon Adams' previous behavior in the law library.  DUF 45.

1   Plaintiff contends that Tinsley had him removed for from his job assignment because she was

2   upset that he was attacking her credibility by filing a staff complaint.  Opp. 34-35.

3   Plaintiff bears the burden of proving "that there were no legitimate correctional purposes

4   motivating the actions he complains of." Pratt, 65 F.3d at 808.  Although plaintiff contends that

5   defendant removed him from his job assignment in retaliation for filing a staff complaint, plaintiff

6   has offered no evidence to this effect, only conjecture.[4]  Further, plaintiff has not set forth evidence

7   demonstrating that the removal was not motivated by *any* legitimate correctional purpose in that

8   plaintiff does not dispute his previous behavior in the law library.  As noted, the court must "'afford

9   appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate

10  penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995)

11  (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

12  Plaintiff has not met his burden of demonstrating the existence of material factual disputes.

13  Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim that defendant

14  asked that he be removed from his law library position in retaliation for filing a staff complaint.

15          c.      July 20, 2005 CDC 128-B Chrono

16  Defendants contend that Tinsley issued a CDC 128-B Chrono to Plaintiff on July 20, 2005

17  because he had been disrespectful to library staff and behaved in an aggressive manner toward her.

18  DUF. 49.  The chrono further indicated that based on plaintiff's behavior, defendant Tinsley feared

19  for her safety and thought it best for plaintiff to transfer to another institution.  DUF 50.  Tinsley

20  states that she issued the chrono to:  (1) put plaintiff on notice that his behavior was inappropriate

21  and to deter him from engaging in future disruptive behavior; and (2) to place other correctional staff

22  on notice of plaintiff's disruptive behavior so that they could take appropriate steps to prevent

23  plaintiff from engaging in any similar future behavior.  DUF 51.  Plaintiff filed a second staff

24  complaint against Tinsley on August 7, 2005 alleging that Tinsely had made unfounded and false

25  allegations against him in the July 20, 2005 chrono.  DUF 53.

26  _____

27  [4] Plaintiff's amended complaint and declaration must be based on plaintiff's personal knowledge, not just
mere belief, and must set forth facts admissible in evidence to which plaintiff is competent to testify.  Johnson, 134 at

28  1399-1400; Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985) (citation omitted).

Plaintiff contends defendant Tinsley issued the July 20, 2005 chrono against him in retaliation for his filing staff complaints; however, once again, he does not dispute the underlying behavior. Plaintiff's conclusory assertions that the chrono was false and that defendant issued it to retaliate against him are insufficient to meet his burden. Plaintiff provides no evidence nor does he even argue that he did not engage in the behavior described in the July 20, 2005 chrono. Maintaining order is a legitimate correctional goal. The court cannot think of any circumstance in which the act of yelling at a prison employee and behaving in an aggressive manner by a prisoner would be proper conduct incapable of supporting subsequent disciplinary action. Thus, plaintiff has against failed to set forth evidence demonstrating that the chrono was not motivated by *any* legitimate correctional purpose and this aspect of his retaliation claim also fails as a matter of law.

       d.      <u>September 24, 2005 Chrono and January 5, 2006 Rules Violation Report</u>

       (1)     September 24, 2005 Chrono

On September 24, 2005, defendant Armendariz generated a CDC 128-B chrono against plaintiff. DUF 55. The chrono states that plaintiff was disrespectful and argumentative with staff while in the law library when he was told the copier was out of service. *See* DUF54. Defendants argue the chrono is was not adverse action taken by defendant Tinsley since it was generated and signed by defendant Armendariz.

In opposition, plaintiff argues that the September 25, 2005 chrono was written by Armendariz "as retaliation for defendant Tinsley" Opp. 37:15-16. In support of this argument, plaintiff submits a log which appears to indicate that he was charged for legal copies on September 25, 2005. *See* Opp. Ex. 14. Plaintiff therefore argues the copy machine could not have been out of service on September 25, 2005 and Armendariz simply made up a reason to issue the chrono against plaintiff "for" defendant Tinsley.

Plaintiff has failed to demonstrate a genuine issue of material fact as to the September 25, 2005 chrono. Plaintiff's speculation that Armendariz issued the chrono for Tinsley in furtherance of her retaliation against him is not sufficient to establish that the chrono was an adverse action by Tinsley. Viewing the evidence in the light most favorable to plaintiff, the log demonstrates that he was charged for legal copies of September 25, 2005. However, in the chrono, Armendariz states,

On 9-24-05 at approximately 0930 hours, while performing my duties as LTA in Facility "A" library, I was approached by several inmate doing legal research requesting copy services. I informed the inmates that the copy machine was out of order. I told them if they would leave their legal copies with me I would run them during my lunch hour in another office and return them back after lunch. Inmate Adams, P65157, approached me and stated, "I can't come back in the afternoon, I have a visit. I told Adams, if he needed copies done he would have to leave his copies and could pick them up like everyone else in the afternoon. Inmate Adams, became very argumentative and disrespectful by stating "I don't give a Fuck I need copies run them no matter how they come out . . ."

Thus, the log does not demonstrate that the copier was working on September 25, 2005 or that Armendariz lied to plaintiff. That plaintiff was charged for copies on this day is consistent with the chrono which states that Armendariz would make the copies later in another office. Thus, plaintiff has failed to demonstrate a disputed issue of material fact as to Tinsley's involvement in the chrono and that it constitutes adverse action taken by Tinsley.

(2)      January 5, 2006 Rules Violation Report

On January 5, 2006, plaintiff received a Rules Violation Report for kicking a building door. DUF62. The Rules Violation Report was authored by Officer Barrier, and reviewed by Sergeant Fuhlrodt and Captain Cheney. DUF 60-61. Defendants contend defendant Tinsley had no involvement in the report.

In opposition, plaintiff contends that on the day in question, Tinsley lied to him and told him he had to pick up his legal materials at his housing unit just to make him upset. Opp. P. 75. Plaintiff states that when he returned to his building, the office would not let him in and he kicked the door, which resulted in the Rules Violation Report. Opp. 75: 21-24. Plaintiff contends that Tinsley was interviewed as a witness in connection with the violation. *Id.*

Plaintiff has failed to demonstrate any causal connection between the Rules Violation Report and defendant Tinsley. While Tinsley may have been interviewed as a witness, there is no evidence, other than plaintiff's speculation, that Tinsley had anything to do with its issuance. Moreover, plaintiff has failed to demonstrate that there was no legitimate penological purpose for the report. Once again, plaintiff admits the wrongdoing that is the subject of the violation, namely that he kicked the building door. Even if plaintiff's allegation that Tinsley lied to him in order to upset him is true,

1   plaintiff has not presented evidence creating a disputed issue of fact as to the legitimate penological

2   purpose of the Rules Violation Report.  Thus, this claim also fails as a matter of law.

3         E.      Conclusion

4         For the reasons set forth herein, the court finds that defendant is entitled to judgment as a

5   matter of law on all of plaintiff's claims against them.  As a result of this finding, the court does not

6   reach defendants' argument that they are entitled to qualified immunity.

7         Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for

8   summary judgment, filed June 16, 2008, be GRANTED, thus concluding this action in its entirety.

9         These Findings and Recommendations will be submitted to the United States District Judge

10   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30)**

11   **days** after being served with these Findings and Recommendations, the parties may file written

12   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

13   Findings and Recommendations."  The parties are advised that failure to file objections within the

14   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

15   1153 (9th Cir. 1991).

16

17         IT IS SO ORDERED.

18   **Dated:    August 19, 2008**              **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28